**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**AN UNDETERMINED QUANTITY OF AN ARTICLE OF DRUG LABELED AS BENYLIN COUGH SYRUP, Defendant-Appellant.**

**No. 78–1122.**

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1978.

Decided Sept. 11, 1978.

---

944

Frederick H. Branding, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Jeffrey S. Davidson, Kirkland & Ellis, Chicago, Ill., for defendant-appellant.

Before CUMMINGS and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

PER CURIAM.

This case is one in which both parties appear to have committed misconduct grievous enough under ordinary circumstances to justify judgment for their opponent. In violation of an injunction entered by a federal district judge in Michigan, the Government persisted in an effort under 21 U.S.C. § 334, an *in rem* proceeding, to condemn $30,000 worth of Benylin Cough Syr-up manufactured and owned by appellant Parke, Davis & Company. Although Parke, Davis was given notice of the Government's action, it declined to appear in the proceedings. During a status call in the condemnation action on April 15, 1977, the district judge ordered the entry of a default judgment against the defendant *res.* When the district court denied Parke, Davis' motion to vacate its default judgment, Parke, Davis filed this appeal, raising first the question whether Parke, Davis' claimed inadvertence or the Government's apparent misconduct justifies vacating the default, and if so whether the district judge in Michigan had jurisdiction to enter the injunction that the Government violated.

Benylin, a drug for the treatment of congestive symptoms related to colds and allergies, has been marketed as a prescription drug in the United States since 1948. After a series of requests by Parke, Davis for permission to market Benylin over the counter [1] and hints by the Food and Drug Administration (FDA) that the drug's approval would be withdrawn altogether, in 1973 the FDA deferred any action on Benylin pending the report of its Over-The-Counter Drug Advisory Panel on Cold, Cough, Allergy, Bronchodilator and Antiasthmatic Drugs. In early 1975 that Panel had tentatively concluded that the drug was safe for over-the-counter use. Consequently in response to a Parke, Davis letter inquiring about going ahead with over-the-counter sales, an FDA attorney informed Parke, Davis that in view of the Panel's apparent decision "there would be almost no possibility that we would institute legal action at this time." The FDA letter added that if Benylin were to be marketed at that time, Parke, Davis would assume the risk that the Agency might not accept the Panel's finding.

Parke, Davis commenced marketing Benylin Cough Syrup without a prescription warning in September 1975. Shortly there-

---

[*] Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. For simplicity, this opinion refers to Benylin when describing FDA proceedings when in actuality those proceedings generally used the term of the drug's principal active ingredient, diphenhydramine hydrochloride.

after, the FDA announced its policy in cases in which a manufacturer commenced over-the-counter distribution of a drug before a final FDA monograph on the safety of that drug became effective. The Commissioner of the FDA advised that if he expresses tentative disagreement with a panel recommendation, the agency will act immediately to restrain the over-the-counter distribution of the product and will not await publication of a final monograph. See 41 Fed.Reg. 32580. A month after that regulation was published and a year after Parke, Davis began marketing Benylin over the counter, the Panel report recommending a safe and effective classification for the drug was published in the Federal Register. 41 Fed. Reg. 38312. In the preamble to that proposed monograph, however, the Commissioner stated that he was deferring decision on the Panel's recommendation as to Benylin. After some inquiry into a supplemental new drug application for Benylin filed by Parke, Davis, the FDA announced that Benylin would be subject to immediate enforcement actions. 41 Fed.Reg. 52536. On November 24, 1976, the FDA sent a telegram to Parke, Davis requesting that the Company recall all existing stocks of Benylin Cough Syrup that did not contain the required prescription labeling.

Responding to this shift in its fortunes, Parke, Davis filed a complaint on November 29, 1976, in the United States District Court for the Eastern District of Michigan seeking a declaration that the FDA's order regarding enforcement actions was arbitrary, capricious and an abuse of discretion. Also requested were a preliminary injunction and a permanent injunction prohibiting the FDA from initiating enforcement actions pursuant to the Agency's order until the FDA's administrative proceedings were completed.

The Michigan District Court scheduled a hearing on the requested preliminary injunction on December 3. Meanwhile, on November 30, the United States took action in the Northern District of Illinois against the res involved in this proceeding. It filed a verified complaint for condemnation and forfeiture under 21 U.S.C. § 334. A warrant of seizure and monition was issued by the district court on the same date and the United States Marshal thereupon executed the warrant by seizure of the drugs named as defendant. The complaint and warrant of seizure and monition were personally served on a Parke, Davis district manager, in whose possession the seized drugs were found. Notice of the seizure was published and mailed to Parke, Davis.

After holding its scheduled hearing and finding that the FDA's enforcement action was arbitrary and capricious and that Parke, Davis was threatened with irreparable harm, the Michigan district judge entered a two-part preliminary injunction on December 8, 1976. First he ordered that the FDA defendants, "their agents, including the United States of America, and defendant's servants, employees, and attorneys, and all persons in active concert and participation with them," are restrained from instituting enforcement actions until final agency action on Parke, Davis' supplemental application. This part of the injunction did not affect the Illinois proceedings because those enforcement proceedings already had been instituted when the preliminary injunction was entered. The Michigan court also ordered that the same parties take "immediate steps to cause the release of the Benylin Cough Syrup seized since the commencement of this action on November 29, 1976." Although the United States Attorney's office in the Northern District of Illinois was aware of the Michigan court's injunction (see U.S.Supp.Br. App. A), it made no effort to comply and no steps were taken to release the seized Benylin.

Assertedly believing that the Illinois case was being held in abeyance pending the appeal of the Michigan injunction, Parke, Kavis did not file a claim for the Benylin seized in the Northern District of Illinois.[2] On his own motion, the district judge scheduled and held status calls in this case on

2. Under Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims, such a claim is to be filed within ten days after process is executed.

March 18, 1977, and on April 15, 1977. The United States Attorney appeared on both occasions, but apparently since it had not filed a claim, Parke, Davis received no notice and did not appear on either occasion. For unexplained reasons, the Assistant United States Attorney handling the case did not extend Parke, Davis the courtesy of informal notice of the status calls. At the first status call, the Assistant United States Attorney advised the district court of the Michigan injunction. At the second status call the district court ordered the entry of default against the defendant *res*. It later also ordered the entry of a decree of condemnation and order of destruction. When Parke, Davis learned of the default, it filed a "special appearance" and moved to set aside the judgment and to stay the proceedings. After five and one-half months the district judge denied the motion. Pursuant to its understanding of the district judge's opinion denying its motion, Parke, Davis then moved to set aside the judgment and for permission to file a claim. When that motion was denied, Parke, Davis filed this appeal.

■ While Parke, Davis sought to vacate the default, the controversy continued in the Sixth Circuit and in the FDA. In October 1977, the Sixth Circuit reversed the Michigan district court's granting of the injunction, holding that such relief was clearly foreclosed by *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088. In an opinion the meaning of which is hotly disputed by the parties in this case, the Sixth Circuit said both that "the district court had jurisdiction" to consider at least a part of the complaint of Parke, Davis, and that "the district court had no jurisdiction to review the decision of the Food and Drug Administration to initi-

ate enforcement actions." On May 31, 1978, the FDA's Administrative Law Judge handed down his "initial decision" on Parke, Davis' supplemental new drug application.[3] His conclusion was that Benylin is a safe and effective drug for over-the-counter use, but the FDA advised us at the oral argument that they will file exceptions to that decision, so that it does not yet constitute final agency action. See 21 C.F.R. § 12.120.

■ In order for Parke, Davis to take advantage of the defense that this agency decision ultimately may provide, or to take advantage of the Government's apparent flaunting of the Michigan injunction, it first must justify vacating the default judgment entered by Judge Crowley. While it is true that default judgments are not preferred (see *Hutton v. Fisher,* 359 F.2d 913 (3rd Cir. 1966)), it is also true that in passing on applications for relief from default, the district court is vested with a substantial amount of discretion. See *Baez v. S. S. Kresge Co.,* 518 F.2d 349 (5th Cir. 1975), certiorari denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754. Without denying that the Government's conduct in this case may have been reprehensible, we hold that Parke, Davis' conduct was sufficiently culpable so that the district court's refusal to vacate the default was not an abuse of discretion.

*Inadvertence*

■ Parke, Davis initially sought relief from default by arguing that its failure to appear in the court below was the result of a mistaken belief that the Government would comply with the Michigan injunction; therefore it argued that it was entitled to relief under Rule 60(b)(1) because the default was based on "mistake, inadvertence, surprise or excusable neglect."[4] Certainly

3. In a post-argument letter, the Government asks us to ignore the ALJ's decision because it is not part of the record. Of course it would have been impossible to make the decision part of the record in the district court since it was handed down only nine days before the argument of this appeal. In any event, the decision of an ALJ is a proper subject of judicial notice (see 10 *Moore's Federal Practice* § 201.02 [1]),

particularly when (as here) properly brought to the court's attention through Circuit Rule 11.

4. The argument that the district court's judgment was in error because it was inconsistent with comity concerns is not by itself a sufficient ground to justify vacating a default, because an appeal from an order denying a motion to vacate raises the sole question of the correctness of that order under Rule 60(b) and

it is not unreasonable for a party to assume that the Government, charged with the duty of enforcing the laws, will obey a court injunction (cf. *Maness v. Meyers*, 419 U.S. 449, 458, 95 S.Ct. 584, 42 L.Ed.2d 574), and in analogous cases at least some courts have found such assumptions sufficient to justify Rule 60(b)(1) relief. See *Brown v. Weschler*, 135 F.Supp. 622 (D.D.C.1955); cf. *In re Jones*, 560 F.2d 775, 778 (7th Cir. 1977). But see *United States v. Erdoss*, 440 F.2d 1221 (2d Cir. 1971), certiorari denied, 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88. However, in this case the district court simply did not believe that Parke, Davis' asserted misunderstanding was the reason for its failure to appear. In denying the motion to vacate default on November 10, 1977, Judge Crowley explained that Parke, Davis "had notice of this action from its inception and deliberately chose not to assert their statutory rights here at any point \* \* \*." It is well recognized that such a deliberate decision not to appear is a sufficient basis to refuse to vacate a default. See *United States v. Erdoss*, 440 F.2d 1221 (2d Cir. 1971), certiorari denied, 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88; see generally *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed 207.

■ Because there is substantial basis in the record for Judge Crowley's conclusion that such a deliberate decision was made in this case, it was not an abuse of discretion to refuse to vacate the default under Rule 60(b)(1). Before the default judgment was entered, Parke, Davis was aware that the Government thought there was a jurisdictional problem with the Michigan injunction and that the Government felt that the injunction "presented the possibility of con-

tempt on the part of government employees" (App. 37). Particularly given the fact that absence of jurisdiction by the enjoining court may be a ground for disobeying an injunction (see *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884), a stronger hint that the Government might be disobeying the Michigan injunction can hardly be imagined. Parke, Davis was not an indigent, unsophisticated party without legal counsel that reasonably might have missed this indication that their claimed assumption was in error (cf. *United States v. One 1966 Chevrolet Pickup Truck*, 56 F.R.D. 459 (E.D.Tex.1972)), and this indication came well before default was entered so that a claim still could have been filed.[5]

The claimed reliance on this mistaken assumption also is belied by the events that took place after the default was entered. Rather than immediately appearing and seeking to file a claim, which would have been consistent with the theory that the Company erroneously relied on Government compliance, Parke, Davis instead only sought to file a "special appearance," still indicating an unwillingness to submit to the jurisdiction of the Illinois district court.[6] Compare *United States v. One 1966 Chevrolet Pickup Truck*, 56 F.R.D. 459 (E.D.Tex. 1972). Such conduct reinforces the conclusion, hinted at even in the assertion in the Company's counsel's affidavit that Parke, Davis did not appear because doing so would be "at variance" with the Michigan order (App. 37), that the decision not to appear was a strategic one not based on reliance upon Government compliance with the Michigan injunction. Had Parke, Davis originally appeared and then forgotten about the litigation, their excuse might

---

is not a substitute for an appeal from the final judgment. See *Swam v. United States*, 327 F.2d 431 (7th Cir. 1964); see generally *Gomes v. Williams*, 420 F.2d 1364 (10th Cir. 1970).

5. As Parke, Davis' own brief recognizes, courts usually are willing to permit motions and appearances even by those who have not filed timely claims. See Reply Br. 9. This recognition is particularly applicable before proceedings have taken place and default is entered. Cf. App. 35.

6. While it is unnecessary to demonstrate why Parke, Davis took such risks to avoid filing an appearance, it may be that whatever the merits of such a fear the Company was concerned that filing a claim and appearance would subject it to *in personam* jurisdiction in the Northern District of Illinois. Cf. *Dry Clime Lamp Corp. v. Edwards*, 389 F.2d 590 (5th Cir. 1968).

have had greater plausibility. Cf. *Robins v. Pitcairn*, 3 F.R.Serv. 60b.21, Case 2 (N.D.Ill. 1940). But in light of Parke, Davis' failure even to appear and the related indications, Judge Crowley's conclusion cannot be termed an abuse of discretion.[7]

## Misconduct

■ Next the Company argues that relief from default is justified because the Government's disobedience of the Michigan injunction constituted "fraud * * *, misrepresentation, or other misconduct of an adverse party." Of course, at least if the Michigan district court had jurisdiction sufficient to enter the violated injunction, the Government committed misconduct as that term is commonly understood. See generally *United States v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884. However, for purposes of Rule 60(b)(3), in order to justify relief, it is generally recognized that the misconduct must be of a type that prevented the other party from fully and fairly presenting its case. See, e. g., *Keys v. Dunbar*, 405 F.2d 955, 957–958 (9th Cir. 1969), certiorari denied, 396 U.S. 880, 90 S.Ct. 158, 24 L.Ed.2d 138; *Gilmour v. Strescon Industries, Inc.*, 66 F.R.D. 146, 153 (E.D. Pa.), affirmed, 521 F.2d 1398 (3d Cir. 1975). In this case, for the reasons noted above,

the district court had reason to disbelieve the assertion that the Government's misconduct had any effect whatsoever on Parke, Davis' failure to present a defense. Parke, Davis' argument therefore is not one in which the court is asked to vacate a default under Rule 60(b)(3) on the ground that misconduct hindered the defense, but rather is more akin to one in which the court is asked under the guise of exercising its equitable powers (see generally *Associates Discount Corp. v. Goldman*, 524 F.2d 1051, 1054 (3d Cir. 1975)) to weigh the opprobriousness of the misconduct against the opprobriousness of the default.

## Balancing the Equities

■ Assuming that such a balancing of equities could be justified either as an application of Rule 60(b)(6) to these facts (but see *Lubben v. Selective Service System Local Board No. 27*, 453 F.2d 645, 651 (1st Cir. 1972)), or as a consideration under Rule 60(b)(3), the district judge's decision not to vacate the default would not be an abuse of discretion (in a choice that could be likened to the one between Scylla and Charybdis). Viewed in the abstract, there is considerable force in Parke, Davis' position that, at least assuming the jurisdiction of the Michigan court,[8] the Government's conduct was

7. Even the "uncontradicted" affidavit by Parke, Davis counsel Charles Lents (App. 36–38) is not inconsistent with Judge Crowley's interpretation when the affidavit is read with the care with which it obviously was written. In paragraph 4, in which the reasons for not filing a claim were stated, Lents explained that Parke, Davis was of the opinion "that it would be an act at variance with the order of the United States District Court for the Eastern District of Michigan" for it to enter the Illinois case. The clear implication of that passage—that the decision not to appear at the very least was not based entirely on the alleged misunderstanding—is not rebutted upon reading the rest of the affidavit. Lents offered as an additional reason the fact that "at the time prescribed for entering a claim to the goods" (see note 2 *supra*), there was no indication that the Government would not comply with the Michigan order. The negative pregnant is that before the default judgment was entered Parke, Davis was given an indication that the Government might not comply. In a later paragraph Lents swore that Parke, Davis was "totally unaware that the case was not being held in

abeyance;" finally he reported that all times Parke, Davis "was in the belief that the well-recognized principle that an injunction must be complied with unless modified or vacated by an Appellate Court would be observed by the Government in connection with this proceeding." Notably, neither of these averments is an unambiguous claim that Parke, Davis' failure to appear before default was caused by the belief that the Government would obey the injunction. In short, Lents' affidavit, even if believed by Judge Crowley in light of the contrary indications discussed in the text, is hardly a convincing statement that the cause of the default was an erroneous reliance on Government obedience to the injunction.

8. We reject the Government's argument that because by statute the United States Attorney exercises discretion over whether to proceed with a seizure he is not acting "in participation" with the FDA and therefore was not included within the injunction. If the injunction had meant to include only those who were required to comply without question with FDA

more reprehensible. "We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574. This duty of compliance is particularly important when Government officers are involved, for "[t]he greater the power that defies the law the less tolerant can this Court be of defiance." *United States v. United Mine Workers*, 330 U.S. 258, 312, 67 S.Ct. 677, 705, 91 L.Ed. 884.

On the other hand, Parke, Davis' deliberate flouting of the Illinois district court, while less threatening to the judicial system, also undermines important judicial policies: the need for parties to appear promptly and to avoid wasting the time of overburdened district judges, and the need to preserve the finality of judgments. More significant in weighing the comparative need to punish these two wrongdoers is the fact that while default is the only remedy against a non-appearing party, vacating a default is not the only remedy available against a party who proceeds with litigation in violation of an injunction. The Government in this case could have been given whatever sanction was appropriate by the district court in Michigan had Parke, Davis begun contempt proceedings in that court. If Parke, Davis had moved for a finding of contempt, both the judicial interest in having parties appear and the interest in obedience to orders could have been satisfied. Having failed to bring those proceedings, Parke, Davis' suggestion that the need to punish the Government's wrongdoing outweighs Parke, Davis' default loses some persuasiveness. Therefore Judge Crowley's balancing was not an abuse of discretion.

■■■ Finally, Parke, Davis adds to the weighing of hardships the fact that affirming the default will have the effect of destroying $30,000 worth of goods that are in the process of being approved for over-the-counter sale based on their apparent effectiveness and safety. We need not decide whether that eventual cost to the public is enough to tip the balance in favor of vacating the default because refusing to vacate the default will not necessarily result in the destruction of the goods. Given that without the Government's apparent misconduct no destruction would be possible at this time and that the destruction would have a damaging effect on the public, this case appears to be an appropriate one of the equitable application by the district court of 21 U.S.C. § 334(d), which provides for the mitigation of forfeitures by allowing the seized goods to be returned to the owner in order to be brought into compliance. See generally *United States v. 1,443 Cases, More or Less, Canned Salmon*, 7 F.Supp. 77 (W.D.Wash.1934); *United States v. 254 Cases and 499 Cases, Each Containing 48 Cans, of an Article Labeled, In Part, "Net Contents 10 Oz. Avoir. Baby Brand Tomato Sauce,"* 63 F.Supp. 916 (E.D.Ark.1945).[9]

directives, it would only have used the words "employees" and "agents." Absent a representation that the United States Attorney and the FDA disagree, we fail to conceive how the attorney who sues on the FDA's recommendation is not participating with the FDA in the seizure. Accord, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681. That reliance on this technicality was unjustified should have been clear given the contrary holdings of this and other courts. See, *e. g.*, *Nelson v. Steiner*, 279 F.2d 944 (7th Cir. 1960); *Royal News Co. v. Schultz*, 230 F.Supp. 641 (E.D.Mich.1964), affirmed as modified, 350 F.2d 302 (6th Cir. 1965). See also *Reich v. United States*, 239 F.2d 134 (1st Cir.

1956), certiorari denied, 352 U.S. 1004, 77 S.Ct. 563, 1 L.Ed.2d 549.

9. Contrary to the Government's argument, Parke, Davis' failure to file a timely claim does not deprive it of standing. Apart from the fact that there clearly is a present controversy between the parties and that the judgment injured Parke, Davis, accepting the Government's standing argument would mean that Rule 60(b) would be unavailable in a large number of *in rem* default cases. Such a strict reading of this remedial rule is unjustifiable. Nor is the relief under Section 334(d) automatically precluded because Parke, Davis did not timely file as claimant. By its terms, Section 334(d) is aimed at the owner of the goods, rather than the claimant referred to in the rest

Granting such relief would not leave Parke, Davis' deliberate default unpenalized, since Section 334 provides for the payment of costs. It would, however, avoid needless destruction, the approval for which was obtained only by what appears to be the most regrettable form of Government misconduct. Parke, Davis should be grateful for the mitigation provisions of Section 334(d), and the Government should be grateful both that one party must prevail and that Parke, Davis chose not to pursue contempt proceedings. The judgment of the district court is affirmed and the cause is remanded for further proceedings consistent herewith.

---

of the Section. Moreover, since the public has a substantial interest in Section 334(d) relief, a motion to intervene as the owner for purposes of Section 334(d) should be viewed more liberally than other motions filed by those who did not make timely claims, which often have been permitted. See, *e. g., United States v. 201 50 Lb. Bags of Furazolidone*, 52 F.R.D. 222 (D.N.

D.1971); *United States v. One 1966 Chevrolet Pickup Truck*, 56 F.R.D. 459 (E.D.Tex.1972).