**CESSNA FINANCE CORPORATION, Plaintiff-Appellee,**

v.

**BIELENBERG MASONRY CONTRACTING, INC., Defendant,**

**Paul Bielenberg, Defendant-Appellant.**

**No. 82–2573.**

United States Court of Appeals, Tenth Circuit.

Aug. 26, 1983.

Michael W. Ellwanger of Kindig, Beebe, Rawlings, Nieland & Killinger, Sioux City, Iowa, for defendant-appellant.

Dennis L. Gillen of Depew & Gillen, Wichita, Kan., for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLOWAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.

App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Paul Bielenberg appeals from the district court's denial of his motion to set aside a default judgment. The judgment arose out of an action on a sales contract brought by Cessna Finance Corporation (Cessna) against Bielenberg Masonry Contracting, Inc. as purchaser and Bielenberg as guarantor. Bielenberg failed to answer or to enter an appearance, and a default judgment was granted against him. Bielenberg's subsequent motion to set aside the default judgment was denied. On appeal, Bielenberg asserts that the judgment was the result of "mistake, inadvertance, or excusable neglect," that he has a meritorious defense to Cessna's claim, and that he is therefore entitled to relief under Federal Rule of Civil Procedure 60(b)(1). We disagree and affirm.

## I.

### FACTUAL BACKGROUND

Bielenberg is the president of Bielenberg Masonry Contracting, Inc. (the Corporation). In late 1979, the Corporation purchased a used Cessna airplane for $85,000 on an installment sales contract, giving a downpayment of $25,000 and agreeing to pay the balance over a five-year term. Bielenberg executed the contract as president of the Corporation. He also signed a Guaranty of Payment under the terms of which he personally assumed "all obligations or liabilities to Cessna Finance Corporation." Both the contract and the guaranty were assigned to Cessna Finance Corporation. The Corporation failed to make the required payments, and on June 17, 1981, the aircraft was peacefully repossessed by agreement of the parties.

On June 19, 1981, Cessna notified Bielenberg and the Corporation by letter that the aircraft had been repossessed and that the balance owed for redemption was $52,297.32. No repossession costs or expenses had been incurred at that date. Defendants were advised that the airplane could be redeemed until July 3, after which it would be offered for private sale, and that they would be obligated to make good any deficiency upon sale. Bielenberg was notified by blind postscript:

"As you are aware, we hold your personal guarantee on the performance of the above account. Therefore, we have no choice but to insist that you make arrangements immediately to pay our contract in full. If it is necessary that we dispose of the collateral as outlined in the foregoing letter, we shall look to you for payment if there is any deficiency resulting."

Rec., supp. vol. 1, at 13.

On September 16, Cessna informed Bielenberg and the Corporation by letter that Cessna was in the process of selling the airplane, and enclosed a copy of the bid solicitation letter that had been distributed to the Cessna dealer organization. Defendants were further informed: "As previously indicated, your right to redeem shall continue until we have sold the aircraft or entered into a contract for its sale. Unless we hear from you, however, the aircraft will be sold to the highest acceptable bidder on the date so indicated." *Id.* at 14. Cessna again notified Bielenberg by blind postscript:

"[W]e hold your personal guarantee on the performance of the above account. If it is necessary that we dispose of the collateral as outlined in the foregoing letter, we shall look to you for payment of any deficiency resulting."

*Id.*

On November 13, Cessna advised the Corporation by letter that the aircraft had been sold for $45,557. The letter stated that $12,370.82 in repossession and storage costs had been incurred prior to sale, and that a deficiency of $19,111.14 thus existed.

"Under the terms of the security agreement, the above deficiency is your responsibility and therefore, we are making demand that the balance listed above be retired immediately.

"We will expect to hear from you by December 14, 1981 as to what arrange-

ments have been made to pay this deficiency."

*Id.* at 15. Once again, Bielenberg was informed by blind postscript that he was being held responsible for the deficiency because of his guarantee.

When the Corporation did not pay the deficiency, Cessna began an attempt to collect from Bielenberg personally. After a series of communications between Bielenberg's attorney and counsel for Cessna, Cessna was told that Bielenberg would not enter into any negotiations for payment of the deficiency. Consequently, on April 26, 1982, Cessna filed this diversity suit in Kansas district court. On April 29, the Corporation filed for Chapter 11 Bankruptcy in Iowa district court. On April 30, Bielenberg was personally served with two copies of Cessna's complaint: one on him individually, and one as president of Bielenberg Masonry Contracting, Inc.

Neither Bielenberg nor the Corporation filed a responsive pleading, and ultimately a default judgment was entered on June 9. Cessna's attorney sent Bielenberg's attorney a copy of the Journal Entry of Judgment.

Bielenberg filed a motion in district court to set aside the default judgment, arguing that he was entitled to relief under Federal Rule of Civil Procedure 60(b)(1). The trial court denied Bielenberg's motion, and this appeal resulted.

## II.

### RULE 60(b)(1)

Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ...." Fed.R.Civ.P. 60(b)(1). This court has followed other jurisdictions in declaring that Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule. It is not a substitute for appeal, and must be considered with the need for finality of

judgment. *Brown v. McCormick,* 608 F.2d 410, 413 (10th Cir.1979). As the Fifth Circuit has noted, the rule

"seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts.'"

*Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401 (5th Cir.1981) (quoting *Banker's Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.1970) (emphasis in original)). Rule 60(b) "should be liberally construed when substantial justice will thus be served." *Thompson v. Kerr-McGee Refining Corp.,* 660 F.2d 1380, 1385 (10th Cir.1981) (citing *Pierce v. Cook & Co.,* 518 F.2d 720, 722 (10th Cir.1975) (en banc)), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1982).

Additional considerations come into play when the 60(b) motion concerns a default judgment. As the District of Columbia Circuit has noted,

"strong policies favor resolution of disputes on their merits: '[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.'"

*Jackson v. Beech,* 636 F.2d 831, 836 (D.C. Cir.1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689, 691 (D.C.Cir.1970) (per curiam)). We do not favor default judgments because the court's power is used to enter and enforce judgments regardless of the merits of the case, purely as a penalty for delays in filing or other procedural error. *See id.* at 835. However, a workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure.

See *Seven Elves,* 635 F.2d at 401; *Gomes v. Williams,* 420 F.2d 1364, 1366 (10th Cir. 1970). The threat of judgment by default serves as an incentive to meet this standard.

The guidelines governing a district court's consideration of a Rule 60(b)(1) motion, and any ensuing appeal, are well established. The rule requires that a movant demonstrate mistake, inadvertence, surprise, or excusable neglect. In addition, to avoid frivolous litigation in default judgment cases, "courts have established the further requirement that a movant demonstrate the existence of a meritorious defense." *Olson v. Stone (In re Stone),* 588 F.2d 1316, 1319 (10th Cir.1978). In the present case, the trial court held that Bielenberg failed to satisfy either prong of this test. Because we dispose of this appeal on the first ground, we need not address Bielenberg's claim of a meritorious defense.

Justification for relief—in this case, the existence of excusable neglect—is litigated on the merits. "[A] party seeking to establish excusable neglect must plead and prove it. The opposing party is entitled to present controverting evidence demonstrating the absence of excusable neglect . . . ." *Id.* The trial court must determine whether excusable neglect has in fact been established, resolving all doubts in favor of the party seeking relief. *Jackson,* 636 F.2d at 836; *see* 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 60.19 at 232–33 (2d ed. 1978).

The district court is vested with a great deal of discretion in its decision to grant or deny a Rule 60(b) motion. *Gomes,* 420 F.2d at 1366. On appeal, the trial court's decision will not be overturned absent a showing of an abuse of discretion. *First National Bank & Trust Co. v. International Coating Applicators, Inc. (In re International Coating Applicators, Inc.),* 647 F.2d 121, 124 (10th Cir.1981).

Both parties submitted affidavits to the trial court upon Bielenberg's 60(b) motion. Bielenberg declared:

"On April 29, 1982, my corporation (Bielenberg Masonry Contracting, Inc.), which had purchased this airplane, filed for Chapter 11 Bankruptcy in the Northern District of Iowa. · Thereafter, Cessna filed a lawsuit against Bielenberg Masonry Contracting, Inc. and Paul Bielenberg. I was served with papers. However, I felt that this was a claim that would have to be handled in the bankruptcy proceeding. I didn't realize at the time that the complaint was against both the corporation and me personally, and furthermore, I did not realize that any case against me personally could proceed regardless of the bankruptcy proceeding. For this reason, I did not bring this matter to the attention of my personal attorney, Michael W. Ellwanger, nor did I advise the attorney who is representing me in the bankruptcy proceeding, Steven Carter. I received no notice and had no knowledge that the plaintiff was proceeding to obtain a default judgment against me personally. Furthermore, at the time that the papers were served, I was devoting my full time and attention to the preparation and filing of the Chapter 11 Bankruptcy for my corporation. Had I known that the plaintiff was proceeding against my personally, and that the matter was not stayed by the bankruptcy proceeding, I would promptly have advised my counsel so that they could have prepared an answer in resistance to the plaintiff's complaint."

Rec., vol. I, at 16.

Cessna countered by affidavit of its attorney, who stated that he had informed Bielenberg's personal attorney Mr. Ellwanger, that Cessna would hold Bielenberg personally responsible as guarantor, that "on or about April 26, 1982, the undersigned contacted Mr. Ellwanger and was advised that neither Bielenberg Masonry Contracting, Inc. nor Paul Bielenberg desired to enter into any further negotiations and that Cessna Finance Corporation *would have to file a lawsuit against defendants for recovery,*" and that suit was immediately commenced and personal service obtained against Bielenberg individually. *Id.,* supp. vol. I, at 11 (emphasis added).

After reviewing both parties' contentions, the trial court held:

"Defendant Paul Bielenberg's excuse does not constitute a good cause or acceptable reason for failing to take action in his defense here. He was the president of a corporation, and thus is not an unsophisticated litigant. His affidavit indicates he has both a corporate bankruptcy attorney and a separate personal attorney. Consequently, any neglect, mistake or inadvertence in failing to forward plaintiff's complaint to his attorneys is clearly not excusable. Furthermore, he cannot claim surprise since plaintiff attached a copy of the personal guaranty signed by him to its complaint, which plaintiff received through service of process."

*Id.*, vol. I, at 27.

We agree. At best, Bielenberg made an error of law—that he would not be liable by reason of the bankruptcy filing—and then compounded it with an error of judgment in not informing his attorney so that the legal error might have been avoided. Bielenberg was repeatedly warned by Cessna that he would be held personally liable. In this situation, failure to seek advice of counsel does not constitute excusable neglect. *See generally Ben Sager Chemicals International, Inc. v. Targosz & Co.,* 560 F.2d 805, 809 (7th Cir.1977) (neither ignorance nor carelessness by a party or his attorney is a proper basis for Rule 60(b) relief); *Bershad v. McDonough,* 469 F.2d 1333, 1337 (7th Cir.1972) (party's failure to fully inform counsel does not provide grounds for relief); *Greco v. Reynolds,* 416 F.2d 965, 965 (3d Cir.1969) (defendant's failure to answer despite repeated written admonitions of plaintiff's attorneys constitutes inexcusable neglect); *Greenspahn v. Joseph E. Seagram & Sons,* 186 F.2d 616, 619–20 (2d Cir.1951) (party's mistake constituted gross carelessness providing no grounds for relief); *Associated Press v. J.B. Broadcasting,* 54 F.R.D. 563 (D.Md.1972) (no adequate excuse shown for failure to refer matter to counsel); *cf. Ticketron v. Record Museum, Inc.,* 92 F.R.D. 6, 7 (E.D.Pa.1981) (defendant corporate officer's failure to plead excusable where defendant informed attorney of corporate codefendant assuming counsel would

represent him and reasonably believed matter was being handled by corporate counsel); *Kinnear Corp. v. Crawford Door Sales Co.,* 49 F.R.D. 3, 8 (D.S.C.1970) (lay defendant's error of law, consisting of writing pro se to plaintiff's attorney in response to complaint, but not filing, constituted excusable neglect or mistake). *But see McVicker v. Donnelly,* 95 F.R.D. 353, 354 (E.D.Pa.1982) (excusable neglect where defendant could not remember having read complaint received in mail but had assumed all legal documents received pertained to separate legal proceedings).

Based on the contents of the record, or the lack thereof, we find it highly unlikely that Bielenberg and his personal counsel did not know of the need to respond to Cessna's complaint. The record indicates that Bielenberg had sufficient familiarity with the concepts of personal and corporate liability to make it reasonable to assume he knew of his danger. He appears articulate and not unsophisticated in business, supporting the trial court's conclusion that he is not an unsophisticated litigant. *See United States v. An Undetermined Quantity of an Article of Drug Labeled as Benylin Cough Syrup,* 583 F.2d 942, 947 (7th Cir.1978) (per curiam); *Wilson v. Moore & Associates,* 564 F.2d 366, 367 n. 2 (9th Cir.1977). The record indicates, without contradiction, that Bielenberg's attorney informed Cessna's attorney that Cessna would have to file suit against Bielenberg for recovery. Although Bielenberg stated by affidavit that he did not bring "this matter" to the attention of either his personal attorney or his bankruptcy attorney, there are no supporting affidavits from either attorney. Finally, Bielenberg's statement that "I didn't realize at the time that the complaint was against both the corporation and me personally" strains credulity, particularly in light of the separate service of the complaint on Bielenberg as an individual and the repeated warnings communicated to Bielenberg and his personal attorney that Cessna would indeed hold him to his guaranty. *See, e.g., Wilson,* 564 F.2d at 367 n. 2; *Greco,* 416 F.2d at 965. Given these circumstances, it

can reasonably be inferred that Bielenberg made a conscious decision not to defend and is therefore not entitled to relief. *See, e.g., Benylin Cough Syrup,* 583 F.2d at 947.

Based on our examination of the record, we find no abuse of discretion in the district court's finding that Bielenberg failed to establish "mistake, inadvertance, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). Accordingly, the district court's order is affirmed.