**Karla SATTERLEE, Plaintiff,**

v.

**ALLEN PRESS, INC., Defendant.**

**No. 05–4022–JAR.**

United States District Court, D. Kansas.

Oct. 6, 2006.

David O. Alegria, McCullough, Wareheim & Labunker, P.A., Topeka, KS, for Plaintiff.

J. Steven Massoni, Massoni Law Office, LLC, Lawrence, KS, for Defendant.

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

ROBINSON, District Judge.

This matter comes before the Court on plaintiff's "Motion for Reconsideration, to Alter or Amend the Judgement pursuant to Fed.R.Civ.P. 59(e), 60 and Local Rules 5.4.11 and 7.3." (Doc. 47.) On July 31, 2006, the Court entered a Memorandum and Order granting defendant's motion for summary judgment on plaintiff's claims under federal law ("July 31 Order"). (Doc. 44.) Plaintiff now seeks reconsideration of this decision. For the reasons explained in detail below, the Court denies plaintiff relief.

### Legal Standard

At the outset, the Court notes that outside of citation to the federal and local rules above, plaintiff fails to provide any legal authority or analysis as to why this Court should grant the motion for reconsideration. Instead, plaintiff makes a sweeping assertion in the opening paragraph in the memorandum in support of this motion that this relief is warranted because plaintiff's counsel mistakenly failed to file supporting documents to plaintiff's response to defendant's summary judgment motion. Thereafter, plaintiff spends twenty pages rehashing arguments that were presented in opposition to defendant's summary judgment motion. The Court is extremely disturbed by plaintiff's counsel's lack of citation to legal authority, his failure to explain why the Court should grant plaintiff's motion for

reconsideration under the federal and local rules, and his use of this motion as an opportunity to reargue the summary judgment motion. Nevertheless, the Court will analyze plaintiff's motion under the appropriate standard as described below.

Plaintiff moves for reconsideration and/or to alter or amend the judgment under Federal Rules of Civil Procedure 59(e) and 60, and D. Kan. Rules 5.4.11 and 7.3. D. Kan. Rule 7.3(a) provides that "[m]otions seeking reconsideration of dispositive orders or judgments must be filed pursuant to Fed.R.Civ.P. 59(e) or 60." The Court will analyze plaintiff's motion under these various rules in turn.

### 1. Rule 59(e) Motion

■ A motion to alter or amend judgment pursuant to Rule 59(e) may be granted only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[1] Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[2]

■ In her motion, plaintiff fails to articulate this standard, much less provide any reason as to why a motion to alter or amend should be granted under this standard. Plaintiff cannot meet the first basis for granting a Rule 59(e) motion because she does not allege an intervening change

in the controlling law. To the extent plaintiff believes that she has met the second basis because she is presenting new evidence, the Court rejects that argument. Plaintiff is attempting to present evidence that her counsel failed to file with the Court when she responded to defendant's summary judgment motion. None of the exhibits are new evidence. The exhibits consist of deposition transcripts, letters and other documents that were all in existence before the Court issued the July 31 Order. In fact, plaintiff admits this by stating that the supporting documents were "quoted, selected, assembled and prepared for filing" when plaintiff filed her response to defendant's summary judgment motion.[3] Plaintiff's counsel "erroneously believed" that the supporting documents had been filed, and plaintiff now asks that "such documents [ ] be included in the record as part of this motion."[4] Because plaintiff is not seeking to introduce new evidence, she fails to meet the second basis for granting a motion to alter or amend the judgment.

■ Plaintiff also cannot show that her motion should be granted under the third basis. A Rule 59(e) motion should be granted only " 'to correct manifest errors of law' " in the Court's decision.[5] To the extent plaintiff argues that her counsel's failure to properly attach supporting documents to her summary judgment response is a basis for granting a Rule 59(e) motion, this failure was not a manifest error by the Court requiring alteration or amendment to the judgment. Rather, this was an error by counsel. Further, plaintiff does

---

**1.** *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir.1995).

**2.** *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir.1996), *cert. denied*, 520 U.S. 1181, 117 S.Ct. 1461, 137 L.Ed.2d 564 (1997).

**3.** (Doc. 47 at 2.)

**4.** *Id.*

**5.** *Benne v. Int'l Bus. Mach. Corp.*, 87 F.3d 419, 428 (10th Cir.1996) (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir.1992)).

not allege that this relief is needed to prevent manifest injustice. Thus, because plaintiff has not established that relief is warranted under Rule 59(e), her motion to alter or amend judgment pursuant to this Rule is denied.

### 2. Rule 60 Motion

■ Federal Rule of Civil Procedure 60(b) is "an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule." [6] Under Rule 60(b), the court may relieve a party from final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered; ... (3) fraud ... misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied ... or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

This rule attempts to reflect the policy goals of preserving the finality of judgments while pursuing justice "in light of *all* the facts." [7] Rule 60(b) " 'should be liberally construed when substantial jus-

tice will thus be served.' " [8] The decision to grant relief under Rule 60(b) is left to the sound discretion of the trial court. [9]

■ In a motion under Rule 60(b), the movant has the burden to plead and prove justifiable grounds for relief permitted by the rule. [10] Whether a movant has established " 'mistake, inadvertence, surprise or excusable neglect' is an issue to be 'litigated on the merits.' " [11] " 'The trial court must determine whether excusable neglect has in fact been established, resolving all doubts in favor of the party seeking relief.' " [12]

■ In this case, plaintiff fails to articulate any grounds for granting her Rule 60 motion, much less explain to the Court why plaintiff's counsel's failure to attach supporting documents to the summary judgment response is a basis for relief under one of these grounds. In her reply, plaintiff states that she "believes that under Rule 60, plaintiff mistakenly failing to submit the supporting document to her answer to defendant's motion, the inadvertence in submitting the documents and/or excusable neglect all provide appropriate bases [for relief]." [13] Plaintiff cites no case law to support her argument, and provides no legal analysis as to why the failure to submit supporting documents was mistake, inadvertence or excusable neglect. Thus,

---

6. *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir.1983).

7. *Mullin v. High Mountain*, 182 Fed.Appx. 830 (10th Cir.2006) (quoting *Cessna*, 715 F.2d at 1444 (internal quotations omitted)).

8. *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir.2005) (quoting *Cessna*, 715 F.2d at 1444).

9. *Greenwood Explorations, Ltd. v. Merit Gas & Oil Corp.*, 837 F.2d 423, 426 (10th Cir.1988); *Schnuelle v. C & C Auto Sales, Inc.*, 196 F.R.D. 395, 397 (D.Kan.2000).

10. *Cessna*, 715 F.2d at 1445; *Greenwood Explorations*, 837 F.2d at 426; *Estate of Sisk v. Manzanares*, 270 F.Supp.2d 1265, 1282 (D.Kan.2003).

11. *Jennings*, 394 F.3d at 856 (quoting *Cessna*, 715 F.2d at 1445).

12. *Id.* (quoting *Cessna*, 715 F.2d at 1445).

13. (Doc. 51 at 6.)

because plaintiff, as the moving party, has failed to plead and prove justifiable grounds for relief, the Court denies plaintiff's motion under Rule 60.

 Even if the Court were to address plaintiff's Rule 60 motion on these grounds, her motion would be denied. "Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order."[14] As described in more detail below, the Court does not find that plaintiff's counsel committed an excusable litigation mistake. Further, the Tenth Circuit has found that counsel's failure to include supporting documents in a summary judgment response was not an "excusable litigation mistake" under Rule 60(b).[15] Thus, relief under this ground is denied.

 Relief would also be denied as to plaintiff's claims of excusable neglect and inadvertence. Excusable neglect is a "somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."[16] The Supreme Court has stated:

> In other contexts, we have held that clients must be held accountable for the acts and omissions of their attorneys.... This principle applies with equal force here and requires that respondents be held accountable for the acts and omissions of their chosen counsel. Consequently, in determining whether respondents' failure ... was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable.[17]

Moreover, the Tenth Circuit and courts in this district have declined to find attorney carelessness or negligence constitutes "excusable neglect" sufficient to set aside judgment.[18] Further, the Circuit also stated in *Servant of Paraclete v. Does* that "inadvertence by an attorney is not a basis for relief under **Rule 60(b)(1)**."[19] The Court recognizes, however, that the Tenth Circuit recently proclaimed that while the panel in *Servants of the Paraclete* "spoke categorically in that case," the court "had no intention of rejecting the plain language of the rule."[20]

---

14. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir.1999) (citing *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir.1996)).

15. *Wright v. Hickman*, 36 Fed.Appx. 395, 400 (10th Cir.2002).

16. *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

17. *Id.* at 397, 113 S.Ct. 1489 (emphasis in original) (citations omitted); *see also Harvey v. Yellow Freight Sys., Inc.*, 936 F.Supp. 790, 795 (D.Kan.1996) (explaining that because parties choose an attorney as their representatives, they are held accountable for the acts or omissions of their attorneys and that "[a]ny recourse against [the] attorneys for their alleged malpractice must be brought in a timely, separate action against them.").

18. *See, e.g., Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1147 n. 5 (10th Cir.1990); *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir.1983); *Mullin v. High Mountain*, 182 Fed.Appx. 830 (10th Cir.2006); *McMullen v. Wash. Nat'l Ins. Co.*, 19 F.3d 33, 1994 WL 75867 at *1 (10th Cir. Mar.8, 1994) (unpublished table decision); *Schnuelle v. C & C Auto Sales, Inc.*, 196 F.R.D. 395, 397 (D.Kan.2000).

19. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir.2000) (citing *Pelican Prod. Corp.*, 893 F.2d at 1147 n. 5).

20. *Jennings v. Rivers*, 394 F.3d 850, 856 n. 5 (10th Cir.2005).

 The Tenth Circuit has described the plain language of the rule as follows:

> More generally, "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to esp[ecially] through *carelessness.*' The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." [21]

"The determination of whether neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.' " [22] These relevant circumstances include " 'the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.' " [23] Perhaps the single most important factor in determining whether neglect is excusable is fault in the delay.[24] Whether the moving party's underlying claim is meritorious should also be taken into consideration.[25] Further, "[a] court may take into account whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay), and whether the attorney attempted to correct his action promptly after discovering the mistake." [26] " '[A] mistake ... could occur in any [attorney's] office, no matter how well run.' " [27]

Taking into account all of these factors, the Court sees no excuse for counsel's inadvertence in filing plaintiff's summary judgment response without supporting documents or his failure to recognize that these documents had not been attached at the time the response was filed. Plaintiff's counsel has had extensive experience filing and litigating cases in this district.[28] While plaintiff's counsel now contends that the documents were not filed because their large size exceeded the maximum amount allowed by the electronic filing system and that this was the fault of his legal assistant, plaintiff's counsel bears responsibility for this oversight as well.

The electronic filing system notified plaintiff's counsel and his legal assistant of the electronic filings in this case at three different email addresses. According to the receipt for plaintiff's response, filed on May 11, 2006, electronic notification was sent to plaintiff's counsel, Mr. David O. Alegria, at the following email addresses:

---

**21.** *Id.* at 856 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (quoting Webster's Ninth New Collegiate Dictionary 791 (1983) and adding emphasis)).

**22.** *Id.* (quoting *Pioneer Inv. Servs. Co.,* 507 U.S. at 395, 113 S.Ct. 1489).

**23.** *Id.* (quoting *Pioneer Inv. Servs. Co.,* 507 U.S. at 395, 113 S.Ct. 1489).

**24.** *Id.* (citing *United States v. Torres,* 372 F.3d 1159, 1163 (10th Cir.2004)).

**25.** *Id.* at 857 (citing *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.,* 715 F.2d 1442, 1444–45 (10th Cir.1983)).

**26.** *Id.* (citing *Hancock v. Okla. City,* 857 F.2d 1394, 1396 (10th Cir.1988)).

**27.** *Id.* (quoting *Hancock,* 857 F.2d at 1396).

**28.** According to the court's electronic filing system, plaintiff's counsel, Mr. David O. Alegria, has filed approximately seventeen cases in this court since the implementation of the electronic filing system. Mr. Alegria is currently the attorney of record for nine pending cases that have required him to file many motions and responses throughout the litigation of these cases. The Court's review of Mr. Alegria's cases in the court's electronic filing system shows that he has had considerable experience filing documents with this system.

davidalegria@mcwala.com, DOAlegria@aol.com, and jackierogers@mcwala.com. This notice described the filing as: "MEMORANDUM in Opposition by Plaintiff Karla Satterlee re [33] MOTION for Summary Judgment." Plaintiff's counsel was notified in this email that the response had been filed, and there is no indication that supporting documents accompanied this response. To illustrate this process, when plaintiff filed the reply to this motion in which a supporting document was properly attached, he received electronic notice described as "REPLY to Response to Motion by Plaintiff Karla Satterlee re: [46] MOTION for Reconsideration re [45] Judgment (Attachments: # (1) Exhibit A)," indicating that this motion was filed with an attachment. Plaintiff's counsel's failure to file supporting documents and failure to recognize that none had been filed, when he received these notices specifically indicating no attachments, is not excusable neglect.

Further, plaintiff's counsel apparently did not realize that these documents were not attached until the Court pointed this out in the July 31 Order. Between the filing of the response on May 11, 2006 and the issuance of the July 31 Order, plaintiff's counsel could have checked the docket sheet in this case. Had he done so in this two month period, plaintiff's counsel would have realized that he had provided no supporting documents with his response. Additionally, counsel should have been alerted to the failure to file the documents upon receipt of defendant's reply. On the first page of defendant's reply, defendant asserts that plaintiff's response failed to comply with D. Kan. R. 56.1 in several respects.[29] When plaintiff purported to controvert facts in the response and defendant replied that the facts were unsupported or contradicted by the record,

that should have prompted defendant to check the record, particularly when neither the electronic notice and the docket sheet indicated that any attachments had been filed. Thus, the Court finds plaintiff's counsel's neglect in this case was inexcusable, and refuses to grant plaintiff relief under Rule 60.

### 3. D. Kan. Rule 5.4.11 Motion

D. Kan. Rule 5.4.11 provides that "[a] Filing User whose filing is made untimely as a result of a technical failure may seek appropriate relief from the court." Plaintiff submits that the failure to file the supporting documents to the summary judgment response was a result of a technical failure. To support this argument, her counsel has attached an error message that was received when the supporting documents were eventually filed contemporaneously with the filing of this motion to reconsider. Plaintiff wants to the Court to find that an identical error message was received when her counsel's legal assistant attempted to file the supporting documents with the summary judgment response, but failed in doing so. The Court assumes that plaintiff is arguing that this failure was a "technical failure" within the meaning of D. Kan. Rule 5.4.11.

As defendant points out, plaintiff's reliance on this local rule is misplaced. D. Kan. Rule 5.4.13 authorizes the clerk to publish an administrative procedures guide to facilitate the implementation of rules related to electronic filing, including D. Kan. Rule 5.4.11. According to these procedures, a "technical failure" occurs when the electronic filing site "is unable to accept filings continuously or intermittently over the course of any period of time greater than one hour after 10:00 a.m. that

---

**29.** (Doc. 42 at 1.)

day."[30] However, "[p]roblems on the filer's end ... will *not* constitute a technical failure under these procedures nor excuse an untimely filing."[31] In this case, plaintiff does not allege that a "technical failure" occurred, but rather she has shown that there was a problem on the filer's end in that plaintiff's counsel failed to appropriately attach supporting documents to the summary judgment response. Additionally, the administrative procedures guide provides that a filer who cannot file a document electronically because of a problem on the filer's end may file the document conventionally or via fax.[32] Plaintiff's counsel exercised none of these options when filing the summary judgment response. Because plaintiff has not shown there was a "technical failure," she is not entitled to relief under D. Kan. Rule 5.4.11.

### Summary Judgment Order

Even if plaintiff could establish that the Court should reconsider, alter, or amend the judgment based on the exhibits that plaintiff failed to provide for the Court's consideration on summary judgment, the Court would grant defendant's summary judgment motion as none of these exhibits, even when viewed in the light most favorable to plaintiff, provide evidence to support plaintiff's Family Medical Leave Act[33] claims for interference, retaliation, and restoration. The Court notes that many of these arguments that plaintiff asserts in her motion for reconsideration are presented for the first time in this motion, rather than in her summary judgment response, where they should have been presented. Nevertheless, the Court thoroughly addresses the arguments plaintiff raises in her motion for reconsideration below, and determines that summary judgment in favor of defendant was appropriate. Further, the Court continues to decline supplemental jurisdiction over the remaining state law claims.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[34] A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[35] An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[36] The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[37]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[38] "A movant that will not bear the burden of persuasion at trial need not negate the

---

**30.** Administrative Procedure for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means in the United States District Court for the District of Kansas, Part II.H at 14 *available at* http://www.ksd.uscourts.gov/cmecf/rules/index.php.

**31.** *Id.* (emphasis added).

**32.** *Id.*

**33.** 29 U.S.C. § 2601–2654.

**34.** Fed.R.Civ.P. 56(c).

**35.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**36.** *Id.*

**37.** *Id.* at 251–52, 106 S.Ct. 2505.

**38.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

nonmovant's claim."[39] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[40] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[41] When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[42]

### 1. Interference

 A *prima facie* case under an interference theory requires plaintiff to show: (1) that she was entitled to FMLA leave; (2) that some adverse action by the employer interfered with this right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of FMLA rights.[43] Nonetheless, even when an employee requests and can demonstrate an entitlement to FMLA leave, she has no greater rights than the employee who continues to report to work.[44] Thus, an employee may be terminated, even where the termination interferes with her ability to take FMLA leave, so long as she would have been terminated regardless of her leave request.[45]

 Plaintiff devotes approximately half of her motion for reconsideration to the argument that because she gave her employer proper notice, she was entitled to FMLA leave.[46] However, in the July 31

---

**39.** *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir.2003) (citing *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548)).

**40.** *Id.*

**41.** *Id.*

**42.** *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**43.** *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir.2005) (citing *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004)).

**44.** *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir.1998).

**45.** *See id.*

**46.** The Court addressed almost all of plaintiff's arguments regarding notice in the July 31 Order, and will not rehash these arguments again here. The Court found in that order that plaintiff had failed to follow defendant's procedures for requesting FMLA leave for both her nasal procedure and her left wrist surgery. Plaintiff continues to argue that her oral notice to her supervisor, Tom MacEwan, was sufficient for her to take FMLA leave for her nasal surgery, but the Court does not see how this notice was sufficient to make *defendant* aware of her need to take FMLA leave. *See* 29 C.F.R. § 825.302(c). In this motion, plaintiff states three times that plaintiff's verbal notice to MacEwan was sufficient because MacEwan stated that he would notify Human Resources of her condition. Plaintiff provides no citation to the record to support this statement, and the Court cannot find any evidence of this fact in its thorough review of the record. The Court is extremely troubled by plaintiff's misrepresentation of the evidence.

Plaintiff also contends that Rand Allen made the job elimination decisions, but can provide no evidence that Allen had notice of plaintiff's nasal surgery or her upcoming wrist surgery. Plaintiff provides evidence that Allen signed her workers' compensation checks for her right wrist injury in 2001, but provides no evidence that Allen had notice of her other scheduled surgeries in 2003.

As for plaintiff's upcoming wrist surgery, plaintiff now relies on a letter from the insurance company that discusses plaintiff's workers' compensation claims. This letter, dated January 13, 2003 and received by defendant's safety coordinator, states that plaintiff's surgery was scheduled for mid-March because

Order, the Court stated that even if it were to assume that plaintiff was entitled to FMLA protection, her interference claim would still fail because she cannot demonstrate that the employer's action was related to the exercise or attempted exercise of FMLA rights.[47]

Defendant has established that plaintiff would have been dismissed regardless of whether she was entitled to FMLA leave, and plaintiff has failed to come forward with evidence to the contrary. "A reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory."[48] The uncontroverted evidence shows that plaintiff was terminated from her position because Theresa Pickel, the director of defendant's Association Management department decided to eliminate five positions in plaintiff's department.[49] Pickel included plaintiff in the lay offs because plaintiff was not able to learn readily the other tasks that needed completion, there were already other employees who were trained to complete such tasks, and plaintiff had lower job performance ratings than fellow coworkers.[50] By contrast, the

employees who survived the job eliminations had been employed by defendant for some time, could perform all the required tasks, and were able to complete other tasks around the plant. Pickel testified that the retained employees had higher skill sets, and were the most versatile and productive.

In her motion for reconsideration, plaintiff provides the following evidence as demonstrating a causal connection, or relationship, between her leave and her termination: (1) the timing of her termination; (2) defendant's reliance on generic and unspecific reasons for plaintiff's termination; (3) plaintiff's supervisor gave her good evaluations; (4) Pickel did not personally observe plaintiff's work performance; and (5) defendant has denied Pickel's knowledge of plaintiff's alleged protected activity.

 Plaintiff argues that the timing of her termination demonstrates a relationship, or a causal connection, between her leave and defendant's termination of her employment.[51] However, plaintiff provides

she was having nasal surgery in February 2003. Even if the Court were to assume that the letter to the defendant's safety coordinator was sufficient to provide defendant with proper notice that plaintiff was entitled to FMLA leave, as explained above, her interference claim would still fail. "The analysis of improper notice under the FMLA is separate from the analysis of the substantive claim that an employer interfered with the exercise of an employee's FMLA rights." *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 877 n. 2 (10th Cir.2004) (citations omitted). As explained above, since plaintiff cannot establish a substantive claim for interference, summary judgment on her claim was appropriate.

**47.** (Doc. 44 at 11–12.)

**48.** *Bones*, 366 F.3d at 877–78 (citing *Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir.2002) (an indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery); *Gunnell,*

152 F.3d at 1262 (to withstand summary judgment on an interference theory, an employee's termination must have been related to her request for an FMLA leave)).

**49.** Defendant eliminated five positions, but terminated four employees. The fifth position was eliminated when an employee resigned.

**50.** While plaintiff now controverts this fact, as described more fully below, the uncontroverted evidence shows that Pickel considered the job performance ratings when she made the termination decisions.

**51.** *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) ("[U]nless the termination is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."). The Court notes that the Tenth Circuit discusses

no evidence, outside of speculation, that the decision-maker, Pickel, knew that plaintiff was absent from work due to her nasal surgery or that she would miss work for her upcoming wrist surgery when Pickel decided to include plaintiff in the group of four terminated employees. Pickel's lack of knowledge about plaintiff's surgeries shows that plaintiff would have been included in the four terminations regardless of her leave.[52]

Plaintiff objects to the Court's adoption of two of the statements of fact in defendant's summary judgment motion. Plaintiff believes that these statements of fact are too generic and unspecific for the Court to consider in determining whether there was a causal connection between plaintiff's leave and her termination. Plaintiff failed to controvert these statements of fact in her response to the summary judgment motion, and the Court, again, is troubled that plaintiff appears to be using this motion for reconsideration to present new arguments to the Court that should have been raised previously. Nevertheless, the Court will address plaintiff's objection to these paragraphs.

Paragraph 31 reads: "In February 2003, after discussing with employees the workload assignments in the department and determining the impact of job eliminations to that department, Pickel decided to eliminate five positions from the AM & M department." In paragraph 10 of plaintiff's response to defendant's summary judgment motion, plaintiff controverted paragraphs 31, 32 and 25.[53] Plaintiff contended "[n]othing cited refers to discussions."[54] The Court disagrees. To support this statement of fact, defendant cited the following portion of Pickel's deposition:

Q: Now, who participated in the decision-making process to fire Ms. Satterlee?

A: I did.

Q: Anyone else?

A: Martha.

Q: So, just the two of you in the room?

A: Well, I—it was my decision, and to have the layoff and to eliminate positions from AM & M and I, I arrived at that decision basically myself, but after going around and talking to individuals about the workload they had, things that needed to be absorbed if we eliminated these four positions and how that would impact us, and then I presented my thoughts about that to Rand and asked his permission to downsize my depart-

---

the timing of the termination in the context of a retaliation claim, rather than an interference claim in that case. *See also Stover v. Martinez*, 382 F.3d 1064, 1078 (10th Cir.2004) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240–41 (10th Cir.2004) and *Anderson*, 181 F.3d at 1179.)

52. *See Bones*, 366 F.3d at 877–878.

53. The Court notes that plaintiff's controverted facts failed to comply with the local rules. D. Kan. Rule 56.1 requires

> The memorandum or brief in support of a motion for summary judgment **shall** begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts **shall** be numbered and shall refer with particularity to those portions of the record upon which movant relies. All material facts set forth in the statement of the movant **shall** be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

The Court notes that it could have accepted all of defendant's properly supported statement of facts as uncontroverted as plaintiff failed to controvert any of the facts when plaintiff neglected to attach supporting documents. Nevertheless, the Court thoroughly reviewed the record that it was presented through defendant's attachments. See Doc. 44 at n. 2.

54. (Doc. 41 at 4.)

ment. That is not something to my knowledge anybody at Allen Press had ever done before to my knowledge. I mean, I've only been there 19 years, I don't know whether they've done it before, and so, I wanted to check and make sure that it would be okay for me to eliminate lower level position in return for being able to hire staff members for higher level positions like association managers, executive directors and publishers. So, I presented it to Rand, and he approved it, and then I coordinated with Martha to eliminate those positions. There were actually five, but one of the positions was held by somebody who resigned.[55]

Pickel's testimony clearly supports the statement of fact that Pickel, after talking with department employees about their workloads and the impact of job eliminations to the department, arrived at the decision to eliminate five positions.

▐▌ Nor does plaintiff offer anything to controvert the above testimony. Plaintiff cited MacEwan's deposition testimony that plaintiff failed to attach to the record. In this deposition testimony, MacEwan states that Pickel told him that Rand Allen had decided to lay off some employees. This fact does nothing to support plaintiff's causal connection argument.[56] Plaintiff contends that Rand Allen knew about plaintiff's wrist injury because he signed her workers' compensation checks. However, Rand Allen's knowledge of plaintiff's wrist injury in 2001 does not support that there was a causal connection between her

leave and her termination in 2003; rather, the evidence supports the conclusion that plaintiff was terminated because defendant eliminated five positions and plaintiff was included in the layoffs because Pickel determined that she was not as versatile or productive as other employees. Even if plaintiff had presented the Court with this additional fact, plaintiff's FMLA claim would not be saved from summary judgment dismissal.

Plaintiff also objects to the Court's adoption of Paragraph 32 in defendant's summary judgment motion that reads: "Pickel eliminated two positions in the job works department, two positions on the processing support staff team that held the description of administrative specialist as well as one person in the mail room. Pickel thought they could get by with less administrative staff." Plaintiff controverted this fact in paragraph 10 of her response, as described above.[57] To support this statement of fact, defendant cited the following portion of **Pickel's** deposition:

Q: How did you go about determining the specific individuals that would be fired as opposed to positions?

A: Well, I did determine positions. We eliminated a position in meeting management, we eliminated a position in Job Works—and actually we eliminated two positions in Job Works, because the other person who was in Job Works was a senior long term employee that had the ability to perform much high func-

---

**55.** (Doc. 34, Ex. 1, Pickel deposition 178:1–179:13.)

**56.** Additionally, MacEwan's statement is hearsay. "While the party opposing summary judgment 'need not produce evidence in a form that would be admissible at trial, . . . the content or substance of the evidence must be admissible.' " *Wright–Simmons v. Okla. City*, 155 F.3d 1264, 1268 (quoting *Thomas v.*

*Int'l Bus. Mach.*, 48 F.3d 478, 485 (10th Cir. 1995)). "Hearsay testimony cannot be considered because a third party's description of a witness' supposed testimony is 'not suitable grist for the summary judgment mill.' " *Id.* (quoting *Thomas*, 48 F.3d at 485).

**57.** By doing so, plaintiff failed to comply with the local rules. *See supra* n. 53.

tion tasks and she was moved to another position and the position that she had been holding was actually eliminated as well.

And we eliminated two people who were on the processing support staff team that hold that description of AM & M administrative specialist or whatever it is. As well as one person in the mail room who also held that same title.

So I thought we could get by with less administrative staff, one fewer processor which was actually the hardest thing to replace because we were **not** quite done with busy season. And a meeting processor as well as the two Job Works individuals.

Q: Who made the decision as to which individuals in those position would be fired?

A: I did.[58]

The Court adopted defendant's statement of fact in Paragraph 32 of its summary judgment motion because it is supported by the above testimony. To the extent plaintiff objects because she believes others, such as Rand Allen, participated in the decision to fire plaintiff, that fact does not support her argument that there was a causal connection between her leave and her termination. As explained above, defendant provided evidence that plaintiff was terminated due to her job performance in comparison with other employees. In the July 31 Order, the Court found that defendant had shown that plaintiff would have been dismissed regardless of her leave because defendant eliminated five positions and plaintiff was included in the layoffs because she was not as versatile or productive as other employees.

Plaintiff further argues that Pickel's criteria for determining which employees to include in the termination is subjective.[59] The Court disagrees. When Pickel was asked in her deposition how she went about making the termination decisions, she testified that she kept the employees with the higher skill sets, and the employees who were the most versatile and productive. Further, she testified that other employees had complained to her about plaintiff's work and said that they had to check plaintiff's work for errors. Pickel also testified that she took into account the job performance ratings when she stated that "it didn't make sense to let go people who had higher ratings in their job performance and had been there longer in lieu of somebody who wasn't rated as highly and had come into the department more recently."[60] Yet plaintiff states that the record is "completely devoid of any thought process, analysis and/or recollection that Pickel may have had concerning employee's rankings or evaluations" when she made the termination decisions.[61] Again, plaintiff misrepresents the evidence in the record. While Pickel testifies that she did not review any documents when she made the termination decisions, she also testified that she was "well aware that [two retained employees] had better evaluations and were rated higher," and she took that into account when making her decision.[62] Further, plaintiff's argument

---

**58.** (Doc. 34, Ex. 1, Pickel deposition 314:9–315:12.)

**59.** Plaintiff cites *Jones v. Barnhart*, 349 F.3d 1260, 1267–68 (10th Cir.2003), in support of her argument. The Court notes that the Tenth Circuit stated that this type of subjective evidence can show pretext. An analysis of pretext appears below in the *retaliation* context, and not in the interference context.

**60.** (Doc. 34, Ex. 1, Pickel deposition 316:1–24.)

**61.** (Doc. 47 at 12.)

**62.** (Doc. 34, Ex. 1, Pickel deposition 317:22–318:16.)

that Pickel never personally observed plaintiff's work is irrelevant. There is overwhelming evidence in the record that Pickel gathered evidence on employee's abilities and job performance,[63] and that she took these factors into account when making the termination decisions. Under this criteria, plaintiff would have been terminated regardless of her leave.

Plaintiff also takes issue with her termination in light of MacEwan's evaluation of her work. In her last evaluation, plaintiff received a score that put her in the "excellent" category, and MacEwan said that plaintiff was "the employee" for that position.[64] However, after Pickel eliminated five positions in the department, plaintiff's position was no longer in existence. Thus, plaintiff would have been terminated regardless of her leave because her job position had been eliminated.

Finally, plaintiff argues that defendant's denials of Pickel's knowledge of plaintiff's protected activity create a genuine issue of fact. The Court also rejects this argument because defendant has established that Pickel made the termination decisions before she learned that plaintiff was out of the office for her nasal surgery and that plaintiff would be having left wrist surgery in the future.[65] The denial that Pickel knew about plaintiff's surgical procedures is supported by facts in the record, and does not create an issue precluding the Court from granting summary judgment in favor of defendant.

In the Court's review of the record, viewing all facts in the light most favorable to plaintiff, plaintiff has not presented any additional evidence in support of this motion to save her interference claim from summary judgment dismissal. Specifically, plaintiff has not shown a relation, or a causal connection, between her alleged FMLA leave and her termination because defendant has shown that she would have been terminated regardless of her leave. Thus, plaintiff cannot survive summary judgment on her interference claim, and the Court need not alter or amend the judgment.

### 2. Retaliation

 Plaintiff's claim for retaliation also cannot survive summary judgment dismissal. When analyzing FMLA discrimination/retaliation claims under 29 U.S.C. § 2615(a)(2), courts apply the *McDonnell Douglas*[66] burden shifting ap-

---

**63.** For the first time in this litigation, plaintiff raises the fact that plaintiff's evaluation omitted a section, and thus, her performance was not on a 100% scale. While the Court notices this discrepancy in plaintiff's evaluation, this fact, alone, is not enough to create a genuine issue of material fact as to plaintiff's interference claim when there is no evidence that plaintiff's evaluation was purposely skewed by defendant. Further, the evidence shows that Pickel relied on other factors, besides the job performance ratings, in making her termination decisions. She evaluated employees based on their experience in the department and their skill sets. Pickel retained the employees with the higher skill sets, and the employees that were more versatile and productive in their positions. Pickel testified that she included plaintiff in the lay offs because

plaintiff was not able to readily learn the other tasks that needed completion, and there were already other employees who were trained to complete such tasks. Further, Pickel testified that she received complaints from other employees about the quality and accuracy of plaintiff's work, and managers told Pickel that they felt like they had to check plaintiff's work for errors.

**64.** (Doc. 35, Ex. 7 at 50–52.)

**65.** (Doc. 44 at 4–5.)

**66.** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

proach.[67] Under that approach, a plaintiff's establishment of a *prima facie* case creates a presumption of retaliation. The burden then shifts to the defendant to produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason.[68] If the defendant meets this burden, the burden then shifts back to the plaintiff to present evidence that the proffered reason was not the true reason for the employment decision.[69]

■ In the July 31 Order, the Court found that even assuming that plaintiff could establish a *prima facie* case of retaliation, she cannot prove that defendant's proffered reason for her termination is pretextual.[70] "A plaintiff may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"[71] "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment."[72]

As evidence of pretext, plaintiff lists the following: (1) defendant's contention that part of plaintiff's job was eliminated with the implementation of the TIMSS system is contradicted by MacEwan's email; (2) defendant advertised for a new job six months after plaintiff's termination; (3) defendant's supervisor said plaintiff was perfect for her job; (4) the safety coordinator received a letter from the insurance company about plaintiff's surgeries; (5) defendant's lawyer sent a letter to plaintiff's counsel indicating that the job eliminations were based on the company's economic need; and (6) Martha Murphy, defendant's Human Resources Director, does not know if it is illegal for an employer to terminate an employee if an FMLA request is just part of the reason for the termination. None of these arguments show weaknesses or inconsistencies with defendant's proffered reason for plaintiff's termination—that plaintiff was terminated when the director of her department eliminated five positions and laid off the employees with the lower skill sets.

Plaintiff argues that defendant's contention that part of plaintiff's job duties had been eliminated by the TIMSS system is evidence of pretext. During the last year of plaintiff's employment, her department was switching to a new electronic database system called TIMSS. Pickel testified that part of plaintiff's job duties were eliminated with the implementation of TIMSS. Under the old system, plaintiff would run reports and deliver them to association managers.[73] With the TIMSS system, the managers could run the reports themselves.[74] Plaintiff argues that defendant's contention that part of plaintiff's job duties were eliminated is contradicted by MacEwan's email sent on February 26, 2003. In that email, MacEwan informed several employees that plaintiff would be out for sur-

---

67. See *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997).

68. See *id.*

69. *Id.*

70. (Doc. 44 at 13.)

71. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d at 1323).

72. *Id.*

73. (Doc. 34, Ex. 1, Pickel deposition 144:16–145:3.)

74. *Id.*

gery, and he attempted to divide up plaintiff's job responsibilities to "back up" plaintiff while she was out of the office.[75] Plaintiff argues that her job duties could not have been eliminated by the TIMSS system if other people were needed to cover her responsibilities while she was out of the office. The Court disagrees. Pickel testified that only *part* of plaintiff's job duties had been eliminated, meaning that there were other duties that plaintiff was assigned. Since she was going to be out of the office, MacEwan would need someone else to cover plaintiff's assigned duties. This email provides no evidence that defendant's proffered reason for plaintiff's termination was pretextual.

Plaintiff also argues that defendant's advertisement of an available administrative support specialist position after plaintiff's termination is evidence of pretext. The uncontroverted evidence shows that in August 2003, MacEwan participated in the drafting of a new job description for an administrative support specialist position. MacEwan testified that the job description of this position was revised to expand the scope of responsibilities, meaning that a single employee would be required to do many more tasks than he or she had in the past. MacEwan testified that plaintiff was not capable of holding this position because the payment processing portion of the duties on the new job required a high level of attention to detail and more computer savvy than plaintiff possessed. Plaintiff contends that MacEwan testified that "in all honesty he did not think that there was anything that Ms. Satterlee could not do in the new job description." [76] Again, plaintiff blatantly misrepresents the

testimony. The testimony that plaintiff cites reads:

Q: Did you expand the job in a way that the new task was something that Ms. Satterlee would not be able to do?

. . . .

A: Honestly I don't know that she would not be able to do it, but I think that there would be things that I would not ask or require her to do.

Q: What would you like—would you— what would you not ask her to do?

A: Be involved with the payment processing portion of the duties.

Q: And why is that?

A: That particular function requires a high level of attention to detail and a little bit more computer savvy than I think she might have been capable of being able to offer to the position.

Q: Well, did you ever give her an opportunity to be able to do that?

A; No.

Q: Was there anything specifically that makes you think that she might not be able to do that?

A: At the time the abilities that she displayed with the other computer based programs that she had been using at the time.[77]

As shown above, MacEwan testified that he *did not know* whether plaintiff could perform the tasks of the new position, *not* as plaintiff states, that he did not think there was anything that Ms. Satterlee could not do in the new job position. Further, MacEwan stated that he would not ask her to perform the payment processing portion of the duties because he did

**75.** At the date of the email, February 26, 2003, plaintiff's employment position had not yet been eliminated. The job eliminations were not announced to the terminated employees until February 28, 2003.

**76.** (Doc. 47 at 15.)

**77.** (Doc. 48, Ex. 9, MacEwan deposition 61:7–63:5.)

not think she was capable of performing those tasks. Plaintiff also argues that defendant's contention that the new position required someone with more computer savvy is disingenuous when the new system was a more sophisticated, easier-to-use program. But MacEwan testified that this program was not difficult to use "if you had some PC savvy or computer savvy it was not—it was user friendly for somebody that had that background." [78] Earlier, MacEwan testified that he did not think that plaintiff possessed the computer savvy for the job. In this context, plaintiff's advertisement of a new position is not evidence of pretext.

Plaintiff states that she "believes that the Court's decision that the new position description created after Ms. Satterlee was fired required higher skills sets than Ms. Satterlee had [is] based on the testimony of Teresa Pickel." [79] In fact, the Court based its conclusion on the above testimony by MacEwan. Plaintiff contends that MacEwan believed that she was "perfect" for her job, and that she could perform the job functions of the new position. The latter assertion is absolutely false, because as shown above, MacEwan did not think she could perform all the payment processing portion of the duties. Further, there is absolutely no evidence in the record that MacEwan said plaintiff was "perfect" for her job. As previously discussed, MacEwan stated on plaintiff's earlier job evaluation that plaintiff was the employee for her position. Upon Pickel's elimination of five positions in the department, plaintiff's position was no longer available. MacEwan's previous positive statements about plaintiff are not evidence of pretext to contradict defendant's proffered reason that Pickel included plaintiff in the terminations because of her job performance.

■ Defendant next argues that MacEwan's knowledge about plaintiff's upcoming surgeries and the January 13, 2003 letter received by defendant's safety coordinator are evidence of pretext, and that "a reasonable trier of fact may conclude that knowledge by the supervisor and the safety coordinator makes it reasonable to conclude that the decision makers were aware of Ms. Satterlee's need for medical leave in February 2003 and March 2003." [80] This is pure speculation by plaintiff, and she offers no evidence, outside of conjecture, that the decision-maker, Pickel, knew about plaintiff's surgeries when she made the decision to include plaintiff in the five job eliminations. She presents as evidence of Pickel's knowledge the statement by MacEwan that he assumed that Pickel knew about plaintiff's nasal surgery when he sent the February 26, 2003 email. This is an assumption, and again, plaintiff offers no evidence to support her theory.

■ Plaintiff also raises as evidence of pretext a letter from defendant's lawyer to plaintiff after her termination. In that letter, the lawyer states that defendant's job eliminations were based on economic need, and therefore defendant terminated three employees. Plaintiff argues that there is a discrepancy between the reason for the job eliminations and the number of employees eliminated, and this is evidence of pretext. While the number of employees terminated was actually four, the Court does not see how this misstatement—that three employees were eliminated—is evidence of pretext. Nor does the Court see how defendant's reason for the termination is inconsistent with the

78. (Doc. 48, Ex. 9, MacEwan deposition 67:20–23.)

79. (Doc. 47 at 17.)

80. (Doc. 47 at 16.)

record. Pickel testified that she decided to downsize the department by eliminating lower level positions "in return for being able to hire staff members for high level positions like association managers, executive directors, and publishers."[81] She also testified that she thought defendant could get by with less administrative staff. Pickel's statements that she eliminated positions so that those resources could go elsewhere are not inconsistent with the statement in the letter that the job eliminations were based on economic need.

Finally, plaintiff argues that Martha Murphy's lack of knowledge of employment law is evidence of pretext. In her deposition testimony, Murphy was asked if it was illegal to fire an employee for taking FMLA leave, and Murphy answered yes. Then she was asked if it was illegal to fire an employee if only part of the reason for the termination was the employee's FMLA leave. Murphy answered that she did not know. The Court does not see how Murphy's lack of knowledge regarding employment law makes defendant's proffered reason for plaintiff's termination inconsistent or implausible.

Plaintiff cannot show any weakness, implausibility, inconsistency or contradiction to support a reasonable inference that defendant's proffered reason for her termination was pretextual, and therefore she has failed to meet her burden to show pretext.[82] Thus there is no genuine issue of material fact to support plaintiff's retaliation claim, and the Court need not alter or amend the judgment in favor of defendant on this claim.

### 3. Restoration

■ Plaintiff does not raise any arguments related to her restoration claim in her motion for reconsideration, but the Court will nevertheless address this claim. As the Court stated in its July 31 Order, the FMLA requires that an employer restore an employee returning from FMLA leave to the same or equivalent position held by the employee before taking such leave.[83] However, the restored employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."[84] As described in the July 31 Order and in the context of plaintiff's interference claim above, defendant has established that plaintiff would have been terminated regardless of her leave. Plaintiff was not entitled to restoration because her job position had been eliminated. Additionally, she was not entitled to restoration in September 2003, when defendant advertised for an administrative support specialist, because the uncontroverted evidence shows that the new job posting was not the same job that plaintiff had held during her employment and that plaintiff was not qualified for this new position. Summary judgment in favor of defendant on plaintiff's restoration claim was appropriate, and the Court does not find any reason to alter or amend the judgment.

### 4. State Law Claims

■ Plaintiff filed this action invoking the Court's federal question jurisdiction and supplemental jurisdiction over plaintiff's state law claims. Because the

---

**81.** (Doc. 34, Ex. 1, Pickel deposition 179:4–8.)

**82.** *Metzler v. Federal Home Loan Bk. of Topeka*, 464 F.3d 1164 (10th Cir.2006) (citing *Medina v. Income Support Div.*, 413 F.3d 1131, 1138 (10th Cir.2005)).

**83.** 29 U.S.C. § 2614(a)(1).

**84.** § 2614(1)(3)(b).

Court granted summary judgment in favor of defendant on plaintiff's federal claims, the Court is authorized to decline supplemental jurisdiction over the remaining state law claims.[85] Whether to exercise supplemental jurisdiction is committed to the court's sound discretion.[86] In the July 31 Order, the Court declined to exercise supplemental jurisdiction because there are no compelling reasons for this federal court to try plaintiff's state law claims. Additionally, the Court found that there is a compelling reason for this Court to defer the resolution of plaintiff's workers' compensation claims to the Kansas state courts. Plaintiff has brought a claim for retaliatory failure to rehire, reinstate, or hire for filing a workers' compensation claim—a claim that is not recognized under Kansas law. Because it is the judicial policy of the Tenth Circuit that matters of state law should first be decided by state courts,[87] the Court, finding that it is not in a position to expand Kansas law to include plaintiff's claim, declined supplemental jurisdiction over plaintiff's state law claims in the July 31 Order.

Plaintiff now contends that when an issue of state law is not resolved, it is the task of the federal court to predict how the state Supreme Court would rule on the issue. While plaintiff's assertion is correct, she cites cases in which the federal court has jurisdiction when it is sitting in diversity.[88] That is not the case here.

The Court had federal question jurisdiction over this case based on plaintiff's FMLA claims, and the Court was exercising supplemental jurisdiction over the state law claims. After dismissing the FMLA claims, the Court, in its discretion, declined supplemental jurisdiction based on the issues of state law that plaintiff has raised. Because plaintiff raises no compelling argument as to why this Court should exercise supplemental jurisdiction over the state law claims, the Court denies plaintiff's motion to reconsider. The Court, continuing to exercise its discretion, declines supplemental jurisdiction over plaintiff's state law claims.

### Conclusion

Throughout this litigation, the Court has been extremely troubled by the actions and representations of plaintiff's counsel. In this most recent motion, counsel argues that his client is entitled to a motion for reconsideration, yet fails to explain why such relief is warranted under the appropriate legal standards. Rather, plaintiff's counsel provides merely conclusory statements that his failure to file supporting documents to plaintiff's summary judgment response entitles plaintiff to the Court's reconsideration of the July 31 Order. Further, counsel uses this motion as an opportunity to rehash many arguments that were presented to and decided by this Court in the July 31 Order. While the defects in plaintiff's motion alone are

85. 28 U.S.C. § 1367(c)(3).

86. *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 172–73, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *see Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 541 (10th Cir.1995).

87. *Delaney v. Cade,* 986 F.2d 387, 391 (10th Cir.1993); *see also Haas v. Farmers Ins. Group,* 930 F.2d 33, 1991 WL 49768, at *2 (10th Cir. Mar.29, 1991) (unpublished table opinion) (stating that the court did not have

authority to confer or create a cause of action under state law where none exists. Further, the court "cannot, and will not, guess or speculate on whether [a state court] will subsequently adopt or create such a cause of action.").

88. *FDIC v. Schuchmann,* 235 F.3d 1217, 1225 (10th Cir.2000); *Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1382 (10th Cir.1989); *Daitom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1574 (10th Cir.1984).

**1258**

grounds for denial, the Court nevertheless addresses plaintiff's motion under the appropriate standards. As explained above, the Court finds that plaintiff has not established that the Court should reconsider, alter, or amend the judgment, and therefore her motion is denied.

Although the Court finds that plaintiff is not entitled to reconsideration and despite plaintiff's counsel's abuse of this motion to reargue summary judgment, the Court nevertheless addresses these arguments in order to show that reconsideration would not change the result of the July 31 Order. Further, the Court places emphasis on plaintiff's counsel's flagrant distortion of the evidence in the record. In doing so, the Court does not intend to either sanction or excuse counsel's blatant misrepresentations of fact in this motion, but to demonstrate that even if the Court were to take into consideration the supporting documents that counsel neglected to attach to the summary judgment response, the Court finds that summary judgment would be granted on plaintiff's FMLA claims.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's motion for reconsideration (Doc. 47) is **DENIED.**

**IT IS SO ORDERED.**